ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
Attorneys at Law
11341 Gold Express Drive, Suite 110
Gold River, CA  95670
Telephone:  (916) 925-1800
Facsimile:  (916) 925-1265

Attorneys for the Plan Proponent / Debtor

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

[Sacramento Division]

| | |
|---|---|
| In re:<br><br>CALIFORNIA COMMUNITY COLLABORATIVE, INC.,<br><br>Debtor. | Case No. 14-26351-C-11<br>Docket Control No. MHK-14<br><br>Plan Confirmation Hearing:<br>DATE: December 23, 2015<br>TIME:  10:00 a.m.<br>DEPT.:  C (Courtroom 35)<br>**Hon. Christopher M. Klein** |

**BRIEF IN SUPPORT OF CONFIRMATION OF DEBTOR'S AMENDED
PLAN OF REORGANIZATION DATED MARCH 26, 2015, AS MODIFIED**

**I. INTRODUCTION**

This Brief is submitted by California Community Collaborative, Inc. (the "Debtor"), in support of confirmation of its Amended Plan of Reorganization dated March 26, 2015, as modified.  The Debtor also submits the Declaration of Merrell Schexnydre ("Schexnydre Declaration"), the Debtor's Tabulation of Ballots, and the documentary and oral evidence which may be presented at the hearing on confirmation.  This Brief addresses the requirements for confirmation under § 1129 of the United States Bankruptcy Code ("Code") and related sections.

A.    Summary of Developments Regarding Confirmation of the Plan.

After continuing the hearing on approval of the Disclosure Statement as the Debtor worked to obtain critical financing for leasehold improvements at its commercial real property, the court approved the Disclosure Statement in November 2015 and set

the hearing on confirmation of the Plan, for December 23, 2015. On November 25, 2015, the Debtor filed a Modification to the Plan (Dkt. 384), which sets forth an agreed post-confirmation rate of interest on the Class 2.2 secured claim of California Bank & Trust, N.A. ("CB&T"), the successor to the Debtor's pre-petition lender.

At this time, no objections to confirmation of the Plan have been filed. All impaired claim holders have voted to accept the Plan (there are no votes rejecting the Plan), except that two unsecured classes of claim have not voted. The Debtor asserts that the Plan be confirmed under § 1129(a) of the Code as to the affirmatively accepting classes and that confirmation is proper under § 1129(b) as to the two classes that did not vote (which classes are based on separate executory contracts or leases).

B.  Nature of the Plan.

The Plan requires the Debtor to sell or refinance its commercial real property in San Bernardino, California (the "Office Building") and to operate its business, to pay all allowed claims in full with interest. The sale or refinancing must occur so that the allowed claims secured by the Office Building are paid no later than January 30, 2017, and the Class 4 allowed general unsecured claims must be paid in full with interest, no later than three years of the Effective Date of the Plan. Class 3 claims based on executory contracts and leases are either assumed or rejected and otherwise treated as required under § 365 of the Code.

## II. THE PLAN MEETS ALL REQUIREMENTS FOR CONFIRMATION

A.  The Plan Complies with the Provisions of Chapter 11.

To be confirmed, a plan must comply with the applicable provisions of chapter 11 of the Code. 11 U.S.C. § 1129(a)(1). The substantive provisions most relevant in the context of § 1129(a)(1) are §§ 1122 and 1123. Section 1122 governs classification of claims. Section 1123 governs mandatory and permissive plan provisions. See generally 7 Collier on Bankruptcy ¶¶ 1123.01, 1123.02 (15th ed. rev. 2000).

///

### 1. The Plan Properly Designates Claims and Interests Under § 1122.

A plan "may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). A corollary of this rule is that claims of a substantially dissimilar nature may be placed in different classes. Claims may be classified separately if they are not substantively similar, if there are good business reasons for doing so, or if the claimants have sufficiently different interests under the plan; by contrast, claims may not be classified separately solely to gerrymander an affirmative vote. In re Wabash Valley Power Ass'n, 72 F.3d 1305, 1321 (7th Cir. 1995).

The Plan sets out classes of claims, as follows:

| Class | Claimant(s) | Type |
|---|---|---|
| 1 | Priority Non-Tax Claims | Priority non-tax claims per 11 U.S.C. § 507(a)(1), (4), (5), (6), (7), (9), (10) *(unimpaired)* |
| 2.1 | San Bernardino County Tax Collector | Secured (real property taxes) *(impaired)* |
| 2.2 | CB&T | Secured (first deed of trust) *(impaired)* |
| 3.1 | Judicial Council of California | Executory real property lease / executory contract *(unimpaired)* |
| 3.2 | Amtech Elevator Services | Executory contract *(impaired)* |
| 3.3 | All American Alliance Guard Servs., Inc. | Executory contract *(unimpaired)* |
| 3.4 | Kaiser Foundation Health Plan, Inc. | Executory contract *(impaired)* |
| 4 | General unsecured claims | Nonpriority (general) unsecured *(impaired)* |
| 5 | Merrell Schexnydre | Interest in the Debtor *(unimpaired)* |

The Class 1 claims are priority non-tax claims (i.e. with priority under § 507(a)(1), (4), (5), (6), (7), (9), (10)). The Class 2.1 and Class 2.2 claims are those secured by property of the estate, with a separate class of claim for each holder of such claim. These claimants hold security interests against the estate's real property but with different priorities and bases. The Class 3 claims are each claims of the

holders of distinct executory contracts and executory leases, and the Plan includes a separate subclass for each contract. Class 4 nonpriority unsecured claims are claims not included in other classes, all as nonpriority, unsecured claims. The Class 5 claim represents the interest of Merrell Schexnydre, the sole shareholder in the Debtor.

Claims within the classes described above are substantially similar to one another. The various classes are substantially dissimilar. The Plan therefore complies with § 1122 of the Code.

### 2. The Plan Satisfies § 1123(a).

Under § 1123(a)(1) of the Code, a plan must designate classes of claims other than those specified in § 507(a)(2), (a)(3), or (a)(8), and classes of interests.

Here, the Plan does not classify claims for administrative expenses with priority under § 507(a)(2) of the Code (see Plan, Art. III, § A, at 4-5), quarterly fees due to the United States Trustee (see id.), or tax claims with priority under § 507(a)(8) of the Code (see Plan, Art. III, § B, at 5). As a voluntary case, the Debtor's case does not include claims with priority under § 507(a)(3) of the Code.

The Plan classifies claims other than those described above. With respect to classified and unclassified claims, then, the Plan complies with § 1123(a)(1) of the Code.

Under § 1123(a)(2)-(4) of the Code, a plan must: (i) specify whether any class of claims or interests is unimpaired; (ii) specify the treatment of any class of claims or interests that is impaired; and (iii) provide for the same treatment for each class, unless a holder of a particular claim or interest agrees to less favorable treatment. A review of the express terms of the Plan shows that the Plan satisfies each requirement of § 1123(a)(2)-(4). See Plan Arts. III (identification and treatment of administrative expense claims), IV (classification of claims), VI (treatment of claims), VII (non-impaired classes).

Under § 1123(a)(5) of the Code, a plan must provide adequate means for its implementation. Here, the Plan is to be funded first by ongoing business income, then by proceeds of sale or refinance of the Office Building. See Plan, Art. V (means for

implementation of Plan). After months of detailed reporting of post-petition rental income and expenses, and after careful consideration of ongoing and projected business expenses, the Debtor has accumulated funds and has determined that use of those funds and the projected future income will be sufficient to fund disbursements under the Plan. See Schexnydre Declaration ¶ 13k, at 8-9.

Under these circumstances, the Debtor has demonstrated that it will have the income and revenues to provide an adequate means for implementation of the Plan, thereby satisfying § 1123(a)(5) of the Code.

Section 1132(a)6) requires that the plan prohibit the issuance of nonvoting equity securities, to provide an appropriate distribution of voting power among various classes of equity securities. Here, the Plan includes this prohibition and expressly provides that any new class of securities will have the same voting rights as existing securities. Plan Art. XI, § D, at 16-17. Section 1123(a)(6) of the Code is thus satisfied.

Section 1123(a)(7) governs the selection of officers, directors, or their successors under a proposed plan. In this case, the Plan does not alter the provisions of the Debtor's bylaws or articles of incorporation, or otherwise applicable nonbankruptcy law governing the selection of the Debtor's officers. Continuation of the status quo with respect to the selection of officers is typical for small corporations, and in this case is consistent with the best interests of creditors and public policy. The Plan thus satisfies § 1123(a)(7) of the Code.

Section 1123(a)(8) (requiring payment of net disposable income to creditors) is applicable only in individual chapter 11 cases. Because this case is a corporate case, § 1123(a)(8) does not apply.

B.  The Debtor Has Complied with Applicable Provisions of the Code.

The plan proponent's compliance with § 1125, governing disclosure and post-petition solicitation, is enforced through § 1129(a)(2). H.R. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989, 95th Cong. 2d Sess. 126 (1978),

excerpted in Alan N. Resnick & Henry J. Sommer, eds., 1 Collier Pamphlet Ed. 2015, 942-43. After notice to all creditors, the court has approved the Debtor's Disclosure Statement, and thus § 1129(a)(2) is in this regard satisfied. In addition, the Debtor has complied with the reporting and other provisions of the Code, including the requirements of filing monthly reports and providing tax and other documents to the United States Trustee. Schexnydre Declaration ¶ 13c, at 5. As such, § 1129(a)(1) and § 1129(a)(2) are satisfied.

C.   The Plan is Proposed in Good Faith and not by any Means Forbidden by Law.

Section 1129(a)(3) of the Code requires that a plan be proposed in good faith and not by any means forbidden by law. The good faith that is required to confirm a plan of reorganization requires the plan to achieve a result consistent with the objectives and purposes of the Bankruptcy Code. In re Corey, 892 F.2d 829, 835 (9th Cir. 1989), cert. denied 111 S. Ct. 56 (1990); In re Jorgensen, 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986).

The Debtor's chapter 11 petition was precipitated by the impending foreclosure of the Office Building and sequestration of rental income by the Debtor's pre-petition lender, and was motivated by the desire to preserve the equity that would result from the acquisition of additional leases with financially-capable tenants. Further, the Plan was formulated taking into consideration the various creditor groups and paying unsecured creditors in full with interest. Schexnydre Declaration ¶16, at 11. The Plan thus provides for a result consistent with the objectives and purposes of the Bankruptcy Code, and the evidence demonstrates that the Plan is offered in good faith.

D.   Payments Made by the Debtors Have Been Approved or are Subject to Approval as Reasonable.

As required under § 1129(a)(4), all payments or promises of payment for services, costs, or expenses in connection with the Debtor's case are, by definition, subject to approval of the Bankruptcy Court. Plan Art. III, at 4-5.

///

E. <u>The Identities of Insiders Have Been Disclosed Pursuant to § 1129(a)(5).</u>

The Disclosure Statement states the identities of the insiders of the Debtor who will continue post-confirmation to assist the Debtor in management and liquidation of assets. Specifically, Merrell Schexnydre, the Debtor's president and sole shareholder, is to manage the Debtor's operations and supervise the disbursements to creditors under the Plan. <u>See</u> Disclosure Statement, § II, ¶¶ A - C, at 4-5 (describing pre- and post-petition management), § III, ¶ D2, at 16-17 (including description of post-petition business and management). The Disclosure Statement also states the specific amount of compensation is to be paid post-confirmation to Merrell Schexnydre as the Debtor's managing officer. Disclosure Statement, Exh. F ("salaries and wages" set out on monthly basis). The requirements of § 1129(a)(5) of the Code have thus been satisfied.

F. <u>Section 1129(a)(6) is Inapplicable to This Case.</u>

The Debtor is not a regulated utility. Schexnydre Declaration ¶ 12g, at 6. Section 1129(a)(6) is thus not applicable to this case.

G. <u>The Plan Meets the Best Interests of Creditors Test.</u>

Section 1129(a)(7) of the Code provides that each holder of an impaired claim must either accept the plan, or "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date." This is the so-called "best interest of creditors test."

As outlined in the Schexnydre Declaration, impaired classes voted in this case as follows:

| Impaired Class | Accepted | Rejected | Did Not Vote |
|---|---|---|---|
| Class 2.1 | X | | |
| Class 2.2 | X | | |
| Class 3.2 | | | X |

| Impaired Class | Accepted | Rejected | Did Not Vote |
|---|---|---|---|
| Class 3.4 | | | X |
| Class 4 | X | | |

Class 2.1, Class 2.2, Class 3.4, and Class 4 have affirmatively voted to accept the Plan. Section 1129(a)(7)(A)(ii) is therefore satisfied as to these classes of claim under the "best interests of creditors test."

Class 3.2 and Class 3.4, which are also impaired, have not voted to accept or reject the Plan, and thus these classes are not deemed to have accepted the Plan. In re M. Long Arabians, 103 B.R. 211, 215-16 (B.A.P. 9th Cir. 1989). The Class 3.2 claim is based on an executory contract that is assumed under the Plan, and the Class 3.4 claim is based on an executory contract that is rejected. See Schexnydre Declaration ¶ 13h, at 6-7. The modest arrears, if any are still owed, are to be paid in full and the general unsecured claim created by rejection of the contract with the Class 3.4 claimant is also to be paid in full. As such, under the Plan both claimants receive on account of the respective claim 100 cents on the dollar, what would be received in a chapter 7 liquidation. Section 1129(a)(7) of the Code is therefore satisfied.

H.  Acceptance of the Plan.

Under § 1129(a)(8) of the Code, which is subject to § 1129(b), each and every class of claims or interests must either accept the Plan or not be impaired under the Plan. As noted above, however, Class 3.2 and Class 3.4 did not affirmative accept the Plan although these classes are impaired under the Plan. As such, the Debtor must, as demonstrated below, satisfy § 1129(b) as to these classes of claim.

I.  The Plan Treats Claims in Accordance With § 1129(a)(9) of the Code.

Under § 1129(a)(9)(A) of the Code, administrative priority claims under § 507(a)(2) or (3) must be paid on the effective date, except to the extent a claim holder may agree otherwise. There are presently no claims in this case under § 507(a)(2), but under the terms of the Plan, administrative claims with priority under §

507(a)(2) are to receive full payment on the Effective Date of the Plan (or upon court approval), except to the extent agreed otherwise by any such claimant. There are no claims known under § 507(a)(3), in this voluntary case. These provisions thus satisfy § 1192(a)(9)(A) of the Code with respect to claims specified therein.

Under § 1129(a)(9)(B) of the Code, priority claims under § 507(a)(1), (4), (5), (6), or (7) are to receive either full payment on the effective date, or deferred payments of a value, as of the effective date, equal to the allowed amount. In this case, there are no such claims, and in any event the Plan does not impair such claims. Plan Art. VI, at 10-11 (Class 1; treatment as unimpaired claim). As such, § 1129(a)(9)(B) is satisfied in this case.

Under § 1129(a)(9)(c), holders of claims with priority under § 507(a)(8) (priority tax claims) must receive total value as of the effective date of the plan equal to the allowed amount, over a period of no more than five years from the petition date, in a manner no less favorable than unsecured nonpriority claims. The Plan specifically describes these claims in Article III as an unclassified type of claim. See Plan at 5. In this case, there are only two minor claims in this category, in favor of the US Internal Revenue Service ($100) and California Franchise Tax Board ($1,649.48). See Schexnydre Declaration ¶ 13j(3), at 8. Under the Plan, these claims are to be paid in full with statutory interest not later than one year after the Petition Date. Plan at 5. In fact, the Debtor will pay these claims as of the Effective Date. Id. As such, § 1129(a)(9)(c) is satisfied in this case.

J.   At Least One Impaired Class Has Accepted the Plan.

Under § 1129(a)(10) of the Code, at least one class of claims that is impaired under the Plan must accept the Plan, exclusive of acceptance by any insider. In this case, four classes of impaired claims have voted to accept the Plan, including the Class 4 general unsecured claims. See Schexnydre Declaration ¶ 8, at 2-3 (chart listing acceptances and rejections). These votes satisfy § 1129(a)(10).

///

K.   The Plan is Feasible.

Under § 1129(a)(11) of the Code, the court may confirm a plan only if confirmation is not likely to be followed by the liquidation or need for further reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. This is the so-called feasibility test for confirmation of the plan, under which the debtor need not demonstrate certainty of success, but only a "reasonable probability of success". In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir. 1986). At least one court has determined that when the plan under review calls for liquidation of assets of the estate, the feasibility requirement is substantially lessened. In re Jorgensen, 66 B.R. 104, 108 (B.A.P. 9th Cir. 1986) (creditors' liquidating plan determined feasible "[n]otwithstanding some ambiguities", where the court retained post-confirmation jurisdiction to resolve ambiguities). In fact, a literal reading of § 1129(a)(11) suggests that the feasibility requirement may be dispensed with altogether when liquidation is proposed.

In this case, the feasibility of the Plan is demonstrated by the post-petition performance of the Debtor's rental property to date, the acquisition of the Debtor's new lease with Rex and Margaret Fortune Schools of Education, the careful projection of post-confirmation rental income and expenses, and the availability of refinancing. See Schexnydre Declaration ¶ 13k(2)-(5), at 9-10. The Debtor therefore maintains that ample evidence has been submitted for a finding that the Plan is feasible.

L.   U.S. Trustee's Fees are Current as Required by § 1129(a)(12).

The Debtor is as of this date current on all fees due to the United States Trustee under 18 U.S.C. § 1930(a). Schexnydre Declaration ¶ 13c, at 5. This satisfies § 1129(a)(12) of the Code.

M.   Section 1129(a)(13) is Inapplicable.

The Debtor is not liable for payment of retiree benefits, and hence § 1129(a)(13) is inapplicable to this case. Id.

///

N.  Section 1129(a)(14) is Inapplicable.

As a corporate entity, the Debtor is not liable for payment of domestic support obligations, and hence § 1129(a)(14) is inapplicable to this case. Schexnydre Declaration ¶ 13j(2), at 8.

O.  Section 1129(a)(15) is Inapplicable.

The Debtor is a corporation. As such, § 1129(a)(15) of the Code, calling for payments of a particular value where the debtor is an individual, is inapplicable to this case.

P.  Section 1129(a)(16) is Satisfied.

The Plan does not call for transfers of the estate's property, except to the extent the Debtor may sell the Office Building with payment of liens of record from escrow. Plan Art. V, at 8. This conforms with applicable state law, and hence § 1129(a)(15) is satisfied.

Q.  Section 1129(b) is Satisfied as to the Two Classes That Did Not Vote.

Section 1129(b)(1) provides that a plan may be confirmed despite non-acceptance by a class of claims so long as the plan (i) does not discriminate unfairly and (ii) is fair and equitable with respect to each class which is impaired and does not accept the plan. Where the nonaccepting class is an unsecured class of claim, treatment is fair and equitable where "the plan provides that each holder of a claim of such class [will] receive or retain . . . property of a value, as of the effective date . . . equal to the allowed amount of such claim." 11 U.S.C. § 1129(b)(2)(B)(i).

As noted above, the Class 3.2 and Class 3.4 claimants did not vote on the Plan, and each claim holder is a party to a separate executory contract. The Class 3.2 claimant's contract is to be assumed under the Plan, and the modest arrears are to be paid in full promptly, on the Effective Date. The Class 3.4 claimant's contract is to be rejected, and the resulting Class 4 claim (if any rejection damages result) is to be paid in full, with interest, no later than thirty-six months from the Effective Date. In both

///

cases, then, the claimant will receive property of a value equal to the allowed amount of such claim, satisfying § 1129(b)(2)(B)(i).

### III. CONCLUSION

In this case, there is no objection to the Plan, as modified, from any creditor. All holders of impaired classes that voted did so to accept the Plan, but the claims of two classes (of the holders of separate executory contracts) are treated fairly and equitably under § 1129(b)(2)(B). The Debtors' Plan meets the requirements for confirmation. The evidence submitted by the Debtor establishes that the Plan is proposed in good faith, is feasible, and that the provisions of the Plan comply with the Bankruptcy Code. For these reasons, the Debtor requests that the court confirm the Plan.

Dated: Dec. 11, 2015

MEEGAN, HANSCHU & KASSENBROCK

By: Anthony Asebedo
Attorneys for the Debtor