1 | ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
2 | Attorneys at Law
11341 Gold Express Drive, Suite 110
3 | Gold River, CA  95670
Telephone:  (916) 925-1800
4 | Facsimile:  (916) 925-1265

5 | Attorneys for the Debtor / Plan Proponent

6 |

7 | UNITED STATES BANKRUPTCY COURT

8 | EASTERN DISTRICT OF CALIFORNIA

9 | [Sacramento Division]

10 |

| | |
|---|---|
| 11   In re: | Case No. 14-26351-C-11 |
| 12   CALIFORNIA COMMUNITY | Docket Control No. MHK-14 |
| 13   COLLABORATIVE, INC., | DATE :  December 23, 2015 |
| 14              Debtor. | TIME :  10:00 a.m. |
| | DEPT.:  C (Courtroom 35) |
| | **Hon. Christopher M. Klein** |

15 |

16 |

17 | **ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF**
**REORGANIZATION DATED MARCH 26, 2015, AS MODIFIED**

18 |     The hearing on confirmation of the Debtor's Plan of Reorganization Dated March

19 | 26, 2015, as modified (the "Plan"), filed on behalf of California Community

20 | Collaborative, Inc. (the "Debtor") came on for hearing on the date and at the time

21 | indicated above, before the Honorable Christopher M. Klein.  Anthony Asebedo of

22 | Meegan, Hanschu & Kassenbrock appeared on behalf of the Debtor.  Reed S. Waddell

23 | of Frandzel Robins Bloom & Csato, LC, appeared on behalf of California Bank & Trust,

24 | N.A.  Other appearances, if any, were noted on the record.

25 |      The court having stated its findings of fact and conclusions of law on the record

26 | and having determined after notice and hearing that the requirements for confirmation

27 | set forth in 11 U.S.C. § 1129 have been satisfied,

28 | / / /

RECEIVED
December 23, 2015
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0005697171

aa:\mhk-14 plan_a 0326 conf ord

1          **IT IS HEREBY ORDERED** that the Plan is confirmed.  A copy of the Plan,

2    including modification(s), is attached hereto as Exhibit 1 and is incorporated herein by

3    reference.

4

5    Dated: December 23, 2015

6

7

8                                                    _____
                                                     United States Bankruptcy Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

aa:\mhk-14 plan_a 0326 conf ord

1 | DAVID MEEGAN (State Bar No. 114549)
ANTHONY ASEBEDO (State Bar No. 155105)
2 | **MEEGAN, HANSCHU & KASSENBROCK**
Attorneys at Law
3 | 11341 Gold Express Drive, Suite 110
Gold River, CA  95670
4 | Telephone:  (916) 925-1800
Facsimile:  (916) 925-1265
5 |
6 | Attorneys for the Debtor
7 |

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

[Sacramento Division]

| | |
|---|---|
| In re: | Case No. 14-26351-C-11 |
| | Docket Control No. MHK-14 |
| CALIFORNIA COMMUNITY COLLABORATIVE, INC., | |
| | |
| Debtor. | **Hon. Christopher M. Klein** |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION
DATED MARCH 26, 2015, AS MODIFIED**

California Community Collaborative, Inc., (the "Debtor") hereby proposes the following Amended Plan of Reorganization Dated March 26, 2015 ("Plan").

**ARTICLE I.
INTRODUCTION**

On June 17, 2014 , the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code.  Since that time, the Debtor has operated its business and managed its assets as a debtor in possession.

This Plan is the Debtor's proposal to satisfy the debts owing as of confirmation of this Plan, as well as to allow the continued operation of the Debtor's business. Creditors and equity security holders should refer to Articles III, IV, and VI of this Plan for information regarding the precise treatment of claims.  A Disclosure Statement that provides detailed information regarding this Plan and the rights of creditors and equity

security holders has been circulated with this Plan, and this Plan should be read and evaluated by creditors in conjunction with the Disclosure Statement. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II.
## DEFINITIONS

For purposes of this Plan the following terms have the meaning set forth below:

1.    "Administrative Expense Claim" means any cost, claim, or expense of administration of the Case arising before the Effective Date, allowed and entitled to priority in accordance with the provisions of §§ 503 and 507(a)(2) of the Code, including, without limitation, (i) all actual and necessary expenses of preserving the Estate, to the extent allowed by the Court, and (ii) all allowances of compensation and/or reimbursement of expenses of Professionals to the extent allowed by the Court.

2.    "Allowed Claim" means a Claim with respect to which either (i) a proof of claim has been filed with the Court by the Claims Bar Date, or (ii) which is set forth in a specific amount in the schedules of liabilities filed in the Case, as amended from time to time, and not listed as disputed, unknown, contingent, or unliquidated as to amount; and (iii) in either case as to which no objection to allowance has been made.

3.    "Allowed Secured Claim" means an Allowed Claim secured by a lien, security interest, or other charge against property in which the Estate has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of such Allowed Secured Claim in the Estate's interest in such property or to the extent of the amount subject to setoff, as the case may be.

4.    "Case" means the chapter 11 bankruptcy case of the Debtor, designated as Case No. 14-26351-C-11 pending before the Court.

/ / /

5.    "Claim" has that meaning set forth in § 101(5) of the Code.

6.    "Claims Bar Date" means October 15, 2014 as to non-governmental claimants, and December 15, 2014 as to governmental units.

7.    "Code" means title 11 of the United States Code (11 U.S.C. §§ 101-1532), and any applicable amendment.

8.    "Confirmation Date" means the date of entry of an order of the Court confirming this Plan.

9.    "Confirmation Order" means the order of the Court that confirms this Plan, under § 1129 of the Code.

10.    "Court" means the United States Bankruptcy Court for the Eastern District of California, Sacramento Division, in which the Case is pending, and any court having jurisdiction to hear appeal proceedings from such court.

11.    "Creditor Account" is that certain bank account or bank accounts to be set up by the Debtor within fifteen (15) days of the Effective Date, into which the Debtor shall make deposits and then disbursements to claim holders (creditors) pursuant to the terms of this Plan; alternatively, the Debtor may also use the bank account of the Estate existing as of the Confirmation Date, as the Creditor Account.

12.    "Effective Date" of Plan means fifteen (15) days after entry of the order confirming this Plan, provided no stay of confirmation has been entered.

13.    "Estate" means the bankruptcy estate created on commencement of the Case pursuant to § 541(a) of the Code.

14.    "Petition Date" means the date the Debtor filed its voluntary chapter 11 petition, that being June 17, 2014.

15.    "Plan of Reorganization" or "Plan" means this Plan of Reorganization submitted by the Debtor, as amended or modified in accordance with the Code and Federal Rules of Bankruptcy Procedure.

16.    "Post Confirmation Expenses" means all costs, claims, and expenses incurred after the Confirmation Date which (i) if incurred before the Confirmation Date

1   would have been Administrative Expense Claims or (ii) are reasonable, actual, and

2   necessary costs incurred by the Debtor in carrying out its duties under this Plan.

3       17.    "Professional" means person or entity retained or to be compensated

4   pursuant to §§ 326, 327, 330, 503(b), and/or 1103 of the Code.

5       18.    "Pro Rata" means the proportion of the amount of an Allowed Claim in a

6   particular class to the aggregate amount of all Allowed Claims which are entitled to a

7   particular distribution (including disputed or undetermined claims until disallowed) in

8   such class.  In the case of unclassified Priority Tax Claims, this term means the

9   proportion of the allowed amount of any particular Priority Tax Claim to the aggregate

10  allowed amount of all Priority Tax Claims.

11      19.    "Real Property" means the real property commonly known as 655 West

12  2nd Street, San Bernardino, California.

13      20.    Unless otherwise provided above, the terms used in this Plan shall have

14  the same meaning as set forth in §§ 101 and 102 of the Code.

15                          **ARTICLE III.**
                **IDENTIFICATION AND TREATMENT OF ADMINISTRATIVE**
16      **EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES**

17      Under § 503 of the Code, the Court determines and allows administrative

18  expenses of the Estate, which are to be paid as priority claims under § 507(a)(2) of the

19  Code.  Under § 1123(a)(1) of the Code, claims allowed under § 507(a)(2) and (a)(3) of

20  the Code, and under § 507(a)(8) of the Code, are not in classes.

21  A.    Administrative Expense Claims.

22      The Debtor shall pay the full amount of Administrative Expense Claims on the

23  Effective Date, in cash, or upon such other terms as may be agreed upon by the holder

24  of any such claim.  Should any holder of an Administrative Expense Claim agree to

25  payment after the Effective Date, the unpaid amount of such claim shall accrue and be

26  paid interest at the rate of 5% per year after the Effective Date or after approval by the

27  Court, whichever is later.

28  / / /

All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid as an Administrative Expense Claim until such time as the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

Other than Professionals employed by the Debtor pre-confirmation, any party that asserts any Administrative Expense Claim, whether such claim is fixed, liquidated, contingent, or unliquidated, and regardless of whether priority status is asserted for such claim, must, no later than thirty (30) days following the Effective Date, file and serve a motion under applicable rules of procedure for allowance of such claim; otherwise such claim shall be barred. After confirmation of the Plan, the Debtor shall have the right to object to allowance of any Administrative Expense Claim, and the Court shall have jurisdiction to determine such objections.

B.    Priority Tax Claims.

These are the Allowed Claims of governmental units for certain taxes, pursuant to § 507(a)(8) of the Code ("Priority Tax Claims"). Claimants include the California Franchise Tax Board.

Priority Tax Claims will be paid in full, no later than one (1) year from the Petition Date. Priority Tax Claims shall accrue interest after the Petition Date at the statutory rate of interest until paid in full.

**ARTICLE IV.**
**CLASSIFICATION OF CLAIMS**

The claims of creditors shall be divided into the following classes:

**CLASS 1:**    Priority Non-Tax Claims.

Priority claims that are referred to in § 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in a class. These claims consists generally of priority non-tax claims, such as claims for certain wages, claims for certain contributions to

/ / /

1 | employee plans, and claims for domestic support obligations. There are no known
2 | Class 1 Allowed Claims in the Case.

3 | **CLASS 2:**    Secured Claims.

4 | The Allowed Secured Claims set forth in this Class 2 are subject to valuation of

5 | the claimant's collateral and determinations under the provisions of this Plan. This class

6 | is subdivided as set forth below, to provide for the individual treatment of such claims

7 | as required by § 1122(a) of the Code.

8 | After confirmation of this Plan, the Debtor shall continue to have rights and

9 | authority to seek determination of the secured status of any Claim pursuant to § 506 of

10 | the Code. In the event the Debtor and any creditor cannot agree upon the portion of

11 | the creditor's Claim that is secured, the Court shall have jurisdiction post confirmation

12 | to determine same.

13 | **Class 2.1**    San Bernardino County Tax Collector.

14 | This is the Allowed Secured Claim of the San Bernardino County Tax

15 | Collector (the "County") based on unpaid pre-petition real property taxes.

16 | **Class 2.2**    California Bank & Trust.

17 | This is the Allowed Secured Claim of California Bank & Trust ("CB&T"),

18 | which Claim is secured by a first deed of trust against the Real Property. This Claim is

19 | based on the pre-petition loan by Vineyard Bank to the Debtor in the original principal

20 | amount of $9,280,000, on or about September 5, 2008. The Debtor's obligation to

21 | the Class 2.2 claim holder has been guaranteed by Merrell Schexnydre, the Debtor's

22 | president.

23 | **CLASS 3:**    Executory Contracts and Leases.

24 | These Allowed Claims are based on executory contracts and leases between the

25 | Debtors and third parties. Class 3 Allowed Claims are subdivided as stated below:

26 | **Class 3.1**    Judicial Council of California.

27 | This is the Allowed Claim of the Judicial Council of California,

28 | Administrative Office of the Courts (the "Council") based on the Lease Agreement

dated April 9, 2007 (the "Lease"), under which the Debtor is lessor and the Council is lessee of space at the Real Property. The term of the Lease runs from December 31, 2007 through December 30, 2017. As of the Petition Date and continuing to date, there were no defaults by the Debtor under the Lease.

> **Class 3.2**        Amtech Elevator Services.

This is the Allowed Claim of Amtech Elevator Services ("AES"), based on the Master Maintenance Agreement dated July 3, 2013 ("Agreement") under which AES provides ongoing elevator-maintenance services to the Debtor at the Real Property. The term of the Contract runs from July 1, 2013 through June 30, 2018.

> **Class 3.3**        All American Alliance Guard Servs., Inc.

This is the Allowed Claim of All American Alliance Guard Servs., Inc. ("AAA"), under the written Contract starting November 7, 2013 under which AAA provides ongoing guard services at the Real Property.

> **Class 3.4**        Kaiser Foundation Health Plan, Inc.

This is the Allowed Claim of Kaiser Foundation Health Plan, Inc. ("Kaiser") under the Group Agreement in force as of the Petition Date (the "Insurance Contract"), renewals under which Kaiser provided health insurance services to officers of the Debtor in consideration of ongoing premium payments by the Debtor.

**CLASS 4:**        General Unsecured Creditors.

These are the Allowed Claims of general unsecured creditors, any Allowed Secured Claim that as a result of a valuation of the secured claimant's collateral the Claim is unsecured in whole or in part pursuant to the terms of this Plan, and Allowed Claims that result from rejection of a lease or executory contract. This class includes any and all claims which are not more particularly described in Class 1, Class 2.1, Class 2.2, Class 3.1, Class 3.2, Class 3.3, Class 3.4, or Class 5.

**CLASS 5:**        Merrell Schexnydre.

This is the equity interest in the Debtor. The sole holder of this interest is Merrell Schexnydre.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

The Debtor shall be authorized post-confirmation to maintain and conduct its normal business without a trustee. The Debtor desires to and will pay the debts to creditors and other parties entitled to payment pursuant to the terms of this Plan.

A.    Business Operations and Sale or Refinance of Real Property Authorized.

The funds necessary for the implementation of this Plan will be derived from the ongoing operation of the Debtor's leasing business, and also through the sale or refinance of the Real Property, as described below:

1.    Operation of Business. The Debtor shall continue post-confirmation to collect rent from tenants at the Real Property, to pay ongoing necessary expenses of operating its business, maintaining the Real Property, and making any necessary repairs to the Real Property. The Debtor shall deposit all rents received and shall pay all expenses from the Creditor Account, leaving on deposit the net revenues remaining each month after payment of expenses and any distributions to creditors under this Plan, until such time as all distributions under this Plan are made in full.

2.    Sale or Refinance of the Real Property. The Debtor is specifically authorized to sell the Real Property and transfer title thereto or to obtain refinancing secured by the Real Property in order to carry out the terms of this Plan. From any sale or refinancing escrow the Debtor shall pay the necessary costs of sale or refinancing, the full amount of any property taxes due, including the amount necessary to satisfy the Class 2.1 Allowed Secured Claim. From such escrow, the Debtor also shall disburse funds to the holder of the Class 2.2 Allowed Secured Claim as provided in Article VI of this Plan.

B.    U.S. Trustee Fees and Post-Confirmation Reporting.

After confirmation of this Plan, the Debtor shall pay from the Creditor Account to the United States Trustee, for deposit into the Treasury, those Quarterly Fees due under 28 U.S.C. § 1930(a)(6), for each quarter and fraction thereof, until the Case is closed

by entry of a final decree, converted, or dismissed.  Until the Case is closed, converted, or dismissed, at the end of each calendar quarter the Debtor shall also file with the Court, and serve upon the United States Trustee, a post-confirmation report which includes the no less than the following information pertinent to the Case:  (1) whether the plan confirmation order is final; (2) whether deposits, if any, required by the Plan have been made; (3) whether property, if any, to be transferred under the Plan has been transferred; (4) whether the Debtor has under the Plan assumed management of the property dealt with by the Plan; (5) whether Plan disbursements have commenced; (6) whether Quarterly Fees due to the United States Trustee have been paid; and (7) whether all motions, contested matters, and adversary proceedings have been finally resolved.

C.    Use of Creditor Account.

The Debtor shall deposit into the Creditor Account all cash on hand as of the Effective Date and all rents collected from tenants on the Real Property following the Effective Date, and also shall deposit into the Creditor Account the net proceeds of borrowing secured by the Real Property and net proceeds of sale or refinancing of the Real Property.  All net rents after payment of expenses, and net sale and/or refinance proceeds, shall be disbursed from the Creditor Account in accordance with the provisions of this Plan.  The Debtor shall reserve in the Creditor Account at all times an amount reasonably estimated to cover Administrative Expense Claims, projected Post Confirmation Expenses, and amounts due on disputed claims as provided by Article VIII of this Plan.

D.    Distributions from the Creditor Account.

From the amounts reserved for Administrative Expense Claims and Post Confirmation Expenses, the Debtor shall first make distributions on account of same. As and when a distribution on account of any Allowed Claim is due and payable under this Plan, the Debtor shall make such distribution from the Creditor Account, in accordance with this Plan.

E.    <u>Sales Under § 363 of the Code.</u>

The Debtor may elect to file a motion with the Court to obtain an order pursuant to the provisions of § 363 of the Code, which shall apply to a sale of property under this Plan in the same manner as if the Case were pending as a chapter 11 case before confirmation of any Plan of Reorganization and as if the Debtor were a chapter 11 trustee. To the extent any property is subject to liens, interests, encumbrances, or the like, the Debtor may sell such property free and clear of such liens, interests, encumbrances, or the like as provided under § 363(f) of the Code; and the Court shall have jurisdiction to approve such sale as provided under § 363 of the Code.

E.    <u>Post-Confirmation Employment of Professionals.</u>

To the same extent it may have employed Professionals before confirmation of the Plan, the Debtor may employ professionals post-confirmation, except that further Court approval for employment shall not be required. Without limitation, the Debtor is specifically authorized to continue to employ bankruptcy counsel, eviction counsel, if necessary, and to employ accountants to assist in the exercise of its rights and duties under this Plan.

F.    <u>Payment of Post-Confirmation Compensation of Professionals.</u>

All Professionals employed by the Debtor post-confirmation shall be entitled to compensation for services rendered and reimbursement for costs incurred after the Confirmation Date. While compensation for services and reimbursement for costs incurred before the Confirmation Date are subject to Court approval, the Debtor shall be authorized to pay post-confirmation compensation, which shall have a priority consistent with an Administrative Expense Claim, without need for further Court approval.

### ARTICLE VI.
### TREATMENT OF CLAIMS

**Class 1** Allowed Claims (if any) are unimpaired and shall be paid in full with applicable post-petition interest, on or before the Effective Date.

The **Class 2.1** Allowed Secured Claim of the County shall be allowed as set forth in the County's Proof of Claim No. 10 filed September 15, 2014, and shall be paid in full with penalties, costs, fees, and interest to accrue at the statutory rate in accordance with the payment schedule calling for equal annual installments of $41,168.34, as set forth in Exhibit 1 to this Plan. Confirmation of the Plan shall not impair or otherwise affect the Class 2.1 claim holder's security interest in property of the Debtor. In addition, the Debtor shall timely pay ongoing post-confirmation taxes, estimated to be in the amount of $61,161.97 for fiscal year 7/1/2015 to 6/30/2016. Should the Debtor sell or refinance the Real Property before the last installment is due to the Class 2.1 claimant, the Debtor shall pay from escrow the full amount of the Class 2.1 Allowed Secured Claim with interest accrued to the date of full payment.

The **Class 2.2** Allowed Secured Claim of CB&T shall be allowed in the amount of $10,661,668.08 together with (i) interest accruing thereafter from November 4, 2015 and (ii) attorneys' fees and costs incurred on or after November 1, 2015 as permitted in the loan documents between the Class 2.2 claimant and the Debtor in effect as of the Petition Date. The claim shall bear interest at the rate of 6.25% per year from the Confirmation Date. After the Confirmation Date, the Debtor shall continue to make the monthly adequate-protection payments to the Class 2.2 claimant in the amount authorized by the Court as of the Confirmation Date; then, beginning July 15, 2015 and continuing the fifteenth day of each month thereafter until the Class 2.2 Allowed Secured Claim is paid in full, the Debtor shall instead pay the Class 2.2 claimant the amount of $45,000.00 per month, which shall be applied to interest on the Class 2.2 Allowed Secured Claim. The Debtor shall pay the Class 2.2 Allowed Secured Claim in full, with interest, no later than January 30, 2017. Notwithstanding the foregoing, the Debtor may, before January 30, 2017, make a lump-sum payment from escrow for sale or refinancing of the Real Property that by agreement with the Class 2.2 claim holder is in full satisfaction of the Class 2.2 Allowed Secured Claim. Confirmation of the Plan shall be deemed to rescind any Notice of Default recorded against the Debtor's real

1  property before the Petition Date.  Confirmation of the Plan, however, shall not

2  otherwise impair the Class 2.2 claimant's security interest in property of the Debtor and

3  shall not affect or diminish any of the Debtor's non-monetary covenants and obligations

4  owed under the applicable pre-petition loan and security documents.

5       The **Class 3.1** Allowed Claim of the Council shall be treated as follows:

6  As of the Confirmation Date, the Lease with the Council shall be deemed assumed, and

7  the claim shall be unimpaired.

8       The **Class 3.2** Allowed Claim of AES shall be treated as follows.  As of

9  the Confirmation Date, the contract with AES shall be deemed assumed, and the claim

10  shall be unimpaired.

11       The **Class 3.3** Allowed Claim of AAA shall be treated as follows:  As of

12  the Confirmation Date, the Contract with AAA shall be deemed assumed, and the claim

13  shall be unimpaired.

14       The **Class 3.4** Allowed Claim of Kaiser shall be treated as follows:  As of

15  the Confirmation Date, the executory contract with Kaiser shall be deemed assumed,

16  and the claim shall be unimpaired.

17       **Class 4** Allowed Claims shall be paid as follows.  Beginning after the full

18  payment of all Administrative Expense Claims (except such claims being paid as

19  otherwise agreed by the claimant), Priority Tax Claims, and Class 1 Claims, the Debtor

20  shall, on June 30 and on December 31 each year, distribute no less than the aggregate

21  amount of $15,600.00 from the Creditor Account, pro rata, to the holders of Class 4

22  Allowed Claims.  The Debtor shall continue to make such twice-yearly pro rata

23  disbursements to holders of Allowed Class 4 Claims until such time as the Class 4

24  Allowed Claims are paid in full, with simple interest at the rate of 3% per year from the

25  Effective Date.  Class 4 Allowed Claims shall be paid in full with such interest no later

26  than three (3) years from the Effective Date, the final pro-rata disbursement being in an

27  amount sufficient to pay such claims in full.

28  / / /

The **Class 5** interest shall be treated as follows.  Class 5 is unimpaired by this Plan.  The Class 5 equity security holder will retain his interest in the Debtor as same existed immediately before the Petition Date

## ARTICLE VII.
## NON-IMPAIRED CLASSES

Pursuant to § 1123(a) of the Code, the Debtor specifies that the following classes of claims or interests are not impaired under the Plan:  Class 1, Class 3.1, Class 3.3, and Class 5.  The Plan impairs the following classes of claims or interests:  Class 2.1, Class 2.2, Class 3.2, Class 3.4, and Class 4.

## ARTICLE VIII.
## PROCEDURES RELATING TO CLAIMS AND INTERESTS

The following procedures and provisions, along with those more specific provisions set forth elsewhere in this Plan, govern the administration of claims.

A.    Disputed Claims.

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtors have scheduled such claim as disputed, contingent, unliquidated, or unknown in amount.

B.    Delay of Distribution on a Disputed Claim.

Except as specifically stated otherwise in this Plan, no distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.  The Debtor shall withhold disbursement of payment on any disputed claim by retaining the amount of funds such claimant would receive if the claim were allowed in full.  Upon final determination of such dispute, the Debtor shall pay that claim amount allowed by the Court, pursuant to terms of the Plan.

/ / /

/ / /

    C.    <u>Settlement of Disputed Claims.</u>

    The Debtor will have the authority to settle and compromise any disputed claim against the Estate subject to an order of the Court after hearing pursuant to Federal Rule of Bankruptcy Procedure 9019.

    D.    <u>Claims Cap.</u>

    Claims properly scheduled or timely filed as the case may be shall be capped at the amount set forth in the schedules or proof of claim, as of the Confirmation Date. Unless specifically provided for under this Plan, no claim may thereafter be amended to increase the amount asserted against the Debtor or the Estate. This provision may be enforced by any party in interest.

## IX. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    The Debtor assumes or rejects, as the case may be, those executory contracts and/or unexpired leases as specifically described in Article IV of this Plan (Class 3). In addition, the Debtor shall upon the Confirmation Date be deemed to have rejected all executory contracts and/or unexpired leases (i) not expressly assumed as provided in this Plan, (ii) not assumed by prior order of the Court, or (iii) not subject to a motion already filed by the Debtor with the Court. Paragraph "G" of Article XI below governs contracts and leases entered after the Petition Date and on or before the Confirmation Date.

    Proofs of Claim for those Claims arising from rejection of executory contracts and/or unexpired leases must be filed with the Court no later than twenty (20) days following the Confirmation Date. Any such claims asserted or filed after twenty (20) days following the Confirmation Date shall be barred and deemed disallowed without further order of the Court. Should any party to an executory contract or lease assert a claim for a Post-Confirmation Expense, such party must file a motion and obtain an allowance of an Administrative Expense Claim as specifically set forth in Article III of this Plan, or such claim shall be barred.

/ / /

The holders of rejected leases of personal property, if any, shall, to the extent entitled to do so under contract, take possession of the personal property subject to such lease no later than thirty (30) days after the Effective Date.  Should such party fail to take possession within thirty (30) days after the Effective Date, the property subject to such lease shall be deemed abandoned to the Debtor, which shall have the right to dispose of such property as it sees fit.

### X.  MODIFICATION OF THE PLAN

The Debtor may amend or modify this Plan at any time before confirmation if the Court determines in accordance with Federal Rule of Bankruptcy Procedure 3019 that the proposed modification does not materially or adversely effect the interest or any holder of a claim or equity security holder.  If the Court makes such a determination and approves such modification, it shall be deemed accepted by the holders of claims or equity securities who have previously accepted this Plan.

### XI.  GENERAL PROVISIONS

A.    Claims in Controversy.

In the event any claim is in controversy, including without limitation, the claims of administrative, priority, secured or unsecured creditors, and/or equity security holders with respect to their classification and/or amount claimed, the Debtor may nonetheless proceed to pay other creditors pursuant to this Plan and be restored possession of its assets during the pendency of a final determination with respect to any such disputed claim or equity interest.  As set forth in Article VIII, the Debtor shall withhold disbursement of payment on any disputed claim by retaining the amount of funds such claimant would receive if the claim were allowed in full, and upon final determination of such dispute, the Debtor shall pay that claim amount allowed by the Court.

B.    Unclaimed Distributions.

Distributions to creditors under this Plan shall be made by first-class mail to the address provided by each creditor in the proof of claim filed in the Case, and, where no proof of claim was filed but where a creditor holds an allowed claim, to the relevant

1    address as known to the Debtor and set forth in the Debtor's schedules of liabilities.

2    Creditors shall be required to provide written notice to the Debtor of any change of

3    address, for the distribution of payments under this Plan, no later than fourteen days

4    before any scheduled distribution.  Should any distribution be undeliverable because of

5    the lack of a current mailing address for the holder of any Allowed Claim, the Debtor

6    shall use reasonable efforts to obtain a replacement address for the relevant claim

7    holder and shall dispatch the relevant distribution to the replacement address; but

8    should such efforts be unsuccessful, any distributions returned to the Debtor as

9    undeliverable shall become property of the Debtor sixty days after being returned to the

10    Debtor, and the Debtor thereafter shall not be required to dispatch further distributions

11    to any such claim holder until and unless the such claim holder provides a current

12    mailing address for distributions under this Plan scheduled to be made after such

13    address is provided to the Debtor.

14        C.    <u>De Minimis Distributions</u>.

15        Notwithstanding anything to the contrary in this Plan, the Debtor is not required

16    to deliver a payment or distribution to the holder of an Allowed Claim if the amount of

17    cash due is less than $10.00.  The Debtor may round all amounts for distribution to the

18    nearest dollar.

19        D.    <u>Corporate Governance</u>.

20        As of the Petition Date, the Debtor had issued only one class of equity securities.

21    In accordance with § 1123(a)(6) of the Code, the Debtor shall be prohibited from

22    issuing non-voting securities post-confirmation or any equity securities with preference

23    over another class of equity securities with respect to dividends.  If more than one class

24    of equity securities is subsequently issued, the new class(es) shall have voting rights

25    equal to those of the currently existing class.

26    ///

27    ///

28    ///

E.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

F.    Binding Effect.

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

G.    Post-Petition Contracts.

Confirmation of this Plan shall not affect the parties' respective rights under any contract entered after the Petition Date by the Debtor in the ordinary course of the Debtor's business, or under any contract entered with approval of the Court, including but not limited to any contract for the lease of the Real Property.

H.    Headings.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

I.    Cramdown.  Pursuant to § 1129(b) of the Code, the Plan Proponents reserve the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors.

J.    Plan Controls.  Should there be any inconsistency between the terms stated in the Disclosure Statement and the terms of this Plan, the terms of this Plan shall control and take precedence.

**ARTICLE XII.  RETENTION**
**OF AVOIDING POWERS AND**
**AND BANKRUPTCY COURT JURISDICTION**

Upon confirmation, the Debtor shall retain the avoiding powers of §§ 544, 545, 547, 548, and 553 of the Code, and may commence or continue prosecution of any adversary proceedings or motions necessary or appropriate to implement such retained powers.  Confirmation of this Plan shall not impair or cause waiver of any claims of the Debtor against third parties, including but not limited to those claims described in the

1  schedules filed by the Debtor in the Case and/or described in the Disclosure Statement

2  filed in support of this Plan.

3      Following confirmation of this Plan, the Court shall retain jurisdiction of the Case

4  for the following purposes:

5      A.    Modification of the Plan pursuant to § 1127(b) of the Code.

6  Notwithstanding § 1127 of the Code, the Debtor may modify its Plan post-confirmation

7  at any time before closure provided it meets with all other requirements of the Code;

8      B.    Determination of the allowance or disallowance of claims.  The

9  Debtor shall retain post-confirmation the ability to object to the allowance of any claim.

10  The Court shall retain jurisdiction to determine the allowance or disallowance of claims;

11      C.    Determination of any adversary proceedings or motions brought by

12  the Debtor in the exercise of its avoiding powers;

13      D.    Fixing allowance of compensation and other administrative

14  expenses;

15      E.    Collection of money or property due to the Debtor;

16      F.    Determination of disputes involving the Debtor which pertain to

17  events or transactions which occurred prior to the Effective Date including resolution of

18  any pending adversary proceedings;

19      G.    Value the Debtor's property and determine the allowed amount of

20  a claim secured by property of the Debtor and avoidance of liens against property of the

21  Debtor to the extent the amount of the claim exceeds the value of the collateral

22  securing the claim pursuant to § 506 of the Code; and

23      H.    Any other purposes consistent with the laws of the United States,

24  until the Plan has been fully consummated.

25

### ARTICLE XIII.
### DEFAULT PROVISIONS

26

27  In the event there is a default in the payment of any classified or unclassified

28  claim after the Effective Date, the holders of such claims shall be free to exercise any

1  and all remedies they may have under state and federal law, without necessity of

2  further order of the Court.  Alternatively, in such event, in accordance with 11 U.S.C. §

3  1112(b), holders of claims shall be entitled to move the Court for conversion of the

4  Debtor's case to a case under chapter 7, and in the event of conversion all of the

5  Debtor's assets at the time the Case is converted, including property acquired by the

6  Debtor after confirmation of the Plan, shall become property of the post-conversion

7  chapter 7 estate.  The provisions of this section shall not be construed to limit the

8  remedies creditors and other parties-in-interest may have under state or federal law.

9

10  **ARTICLE XIV.**
   **DISCHARGE, REVESTING, AND CLOSING**

11  As of the Confirmation Date, the Debtor shall be fully discharged from any and

12  all obligations that arose prior to confirmation.  Pursuant to § 524 of the Code, the

13  Debtor's discharge pursuant to this Plan operates as an injunction against the

14  commencement or a continuation of an action, the employment of process, or an act,

15  to collect, recover, or offset any discharged debt as a personal liability of the Debtor,

16  whether or not discharge of such debt is waived.

17  Pursuant to § 1141 of the Code, upon confirmation of this Plan all property of

18  the Estate will vest in the Debtor free and clear of any claim and/or lien of any creditor

19  or equity security holder other than as specifically provided in this Plan; provided,

20  however, that if the Case shall be converted post-confirmation to a case under chapter

21  7 of the Code, all property which would have been property of the Estate absent

22  confirmation of this Plan shall be included in property of the chapter 7 Estate.

23  Confirmation of this Plan shall constitute a restructuring of Debtor's obligations and

24  claims to all creditors and shall be deemed to cure any and all defaults existing at the

25  time of confirmation.  Confirmation shall act to cure any default on obligations dealt

26  with in this Plan.

27  / / /

28  / / /

The Court shall retain jurisdiction, and the Case shall not be closed, until:

1.    All notes, security instruments or other documents, required by this Plan to be executed or delivered by Debtor or any creditor or party in interest, shall have been so executed and delivered;

2.    All claims objections, applications for professional compensation, and other motions shall have been finally adjudicated; and

3.    All adversary proceedings filed within the Case shall have been finally adjudicated.

Upon satisfaction of the above conditions to closing and subject to § 350 of the Code, the Debtor shall file a motion for final decree and order closing case, with service on the United States Trustee.

Dated: _____        CALIFORNIA COMMUNITY
                              COLLABORATIVE, INC.


                              By:_____
                                 Merrell Schexnydre
                                 Its president


Dated: _____        MEEGAN, HANSCHU & KASSENBROCK


                              By:_____
                                 Anthony Asebedo
                                 Attorneys for the Debtor

California Community Collaborative, Inc.

0134-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

| Bill Number | Base | Penalty | Cost | Months | as of 6/17/2014 1.50% Interest |
|---|---|---|---|---|---|
| 20080019449 | 26,575.28 | 2,657.53 | 10.00 | 60 | 23,917.75 |
| 20090019286 | 27,012.93 | 2,701.29 | 10.00 | 48 | 19,449.31 |
| 20100019271 | 27,637.56 | 2,763.76 | 10.00 | 36 | 14,924.28 |
| 20120019323 | 28,579.37 | 2,857.94 | 10.00 | 12 | 5,144.29 |
| Redemption Fee | | | 15.00 | | |
| | 109,805.14 | 10,980.51 | 55.00 | | 63,435.63 |

| | Claim (w/o 2014 Interest | | Total | 5 equal pay |
|---|---|---|---|---|
| Payment due 6/17/2015 | $ 21,403.41 | 19,764.93 | $ 41,168.34 | $ 41,168.34 |
| Payment due 6/17/2016 | $ 21,403.41 | 19,764.93 | $ 41,168.34 | $ 41,168.34 |
| Payment due 6/17/2017 | $ 21,403.41 | 19,764.93 | $ 41,168.34 | $ 41,168.34 |
| Payment due 6/17/2018 | $ 21,403.41 | 19,764.93 | $ 41,168.34 | $ 41,168.34 |
| Payment due 6/17/2019 | $ 21,403.41 | 19,764.93 | $ 41,168.34 | $ 41,168.34 |
| | $ 107,017.06 | $ 98,824.63 | $ 205,841.69 | $ 205,841.69 |

| Total | as of 6/17/2015 1.50% | as of 6/17/2016 1.50% | as of 6/17/2017 1.50% | as of 6/17/2018 1.50% | as of 6/17/2019 1.50% | 5 yrs Interest |
|---|---|---|---|---|---|---|
| 53,160.56 | 4,783.55 | 4,783.55 | 4,783.55 | 4,783.55 | 4,783.55 | 23,917.75 |
| 49,173.53 | 4,862.33 | 4,862.33 | 4,862.33 | 4,862.33 | 4,862.33 | 24,311.64 |
| 45,335.60 | 4,974.76 | 4,974.76 | 4,974.76 | 4,974.76 | 4,974.76 | 24,873.80 |
| 36,591.59 | 5,144.29 | 5,144.29 | 5,144.29 | 5,144.29 | 5,144.29 | 25,721.43 |
| 15.00 | | | | | | |
| $ 184,276.28 | 19,764.93 | 19,764.93 | 19,764.93 | 19,764.93 | 19,764.93 | 98,824.63 |

184,276.28 Amt due as of 6/17/14
283,100.91 Total w/interest
(77,259.22) Money in Trust
$ 205,841.69

PAGE __23__ (EXH. __1__)